United States District Court
Southern District of Texas
**ENTERED**
June 20, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| RAUL CHAVEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:22-cv-00199 |
| | § | |
| DOLGENCORP OF TEXAS, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER AND OPINION

The Court now considers Defendant's amended motion for summary judgment[1] (which supersedes its previous motion[2]) and Plaintiff's response.[3] After considering the record and relevant authorities, the Court is **GRANTS IN PART** and **DENIES IN PART**.

### I. FACTUAL AND PROCEDURAL HISTORY

This case arises from an incident in which a ceiling tile fell on a shopper (Plaintiff) in a Dollar General store (owned by Defendant) causing injuries.

Dollar General store #6905 (the "Store") in Mission, Texas, has a ceiling made of fiber drop ceiling tiles[4] with its HVAC system installed above the tiles.[5] The HVAC units range from 10 to 18 years old.[6] Periodically (especially in the summer[7]), the air conditioner would condensate and leak water onto the ceiling tiles.[8] The Store's general manager, Jose Herrera, has seen this

---

[1] Dkt. No. 27.
[2] Dkt. No. 25.
[3] Dkt. No. 28.
[4] *See* Dkt. No. 28-2.
[5] *See* Dkt. No. 28-3 at 11.
[6] Dkt. No. 28-1 at 1-2.
[7] Dkt. No. 28-3 at 14.
[8] *Id.*

"two or three times" during his tenure at the Store.[9] In these situations, Herrera would inform his superiors and they would call for an independent technician.[10]

The record shows that the Store's HVAC system was repaired on July 8, 2020, by a technician who "[f]ound water not draining properly [in several units and he] blew out [the] drain line with oxygen so water can drain properly."[11] A technician was called back out just a month later and "found unit leaking water [and the] drain clogged due to build up on evaporator coil . . . causing cabinet to get too cold and sweat."[12]

On September 30, 2020, a technician was called out because Dollar General employees noticed smoke coming out of the vents.[13] It turned out to just be because the heater kicked on, but the technician also found one unit was frozen because the blower motor locked, and he replaced the blower motor.[14]

On February 25, 2021, a technician "[p]laced a float switch on [a unit's] secondary pan to prevent water leak."[15] He found ice on at least on suction line and cleaned several condenser coils due to excessive dirt.[16] On April 8, 2021, a technician replaced another motor blower and capacitor.

On August 23, 2021, the Store reported "water leaking from AC on the roof to sales floor" and a technician came out the same day. On inspection, he "found unit leaking water, flushed drain and added pan tabs" and found another unit frozen. He returned on August 26, when he "performed [a] leak test [and] found multiple leaks in [the] condenser coil" of another unit and in still another,

---

[9] *Id.*
[10] *Id.* at 7.
[11] Dkt. No. 28-1 at 6.
[12] *Id.*
[13] *Id.* at 7.
[14] *Id.*
[15] *Id.* at 8.
[16] *Id.*

he "cleared drain line, added pan tablets, replaced air filters, applied self rinse to evaporator coil and checked operations."[17]

The Store did not report any more problems until December 18, 2021. Herrera, the general manager, did not notice anything out of the ordinary in the Store that day, and he left around 4:00 p.m. to attend a quinceañera.[18]

Around 9:00 p.m., Plaintiff stood in the Store waiting for his wife to finish shopping.[19] He had cotton balls in one hand and his phone in the other.[20] Suddenly, he felt an impact.[21] One of the ceiling tiles had fallen on him, leaving behind a small crash site of fractured fiber board, cotton balls, and Xbox gift cards.[22]

The falling tile was quickly attributed to an air conditioner leak. Photos from the incident show discoloration (apparently from moisture) around the hole in the ceiling, and the Store's incident report prepared two days after the incident (on December 20, 2021) attributes the fallen tile to an air conditioner leak.[23] The Store's technician notes on December 26, 2021, "ac unit leaking again" and he returned for another drain and repair.[24]

Plaintiff filed suit in state court on February 22, 2022, alleging causes of action for premises liability, negligence, and gross negligence.[25] Defendant removed to this Court on June 24, 2022,[26] and Plaintiff filed an amended complaint on November 2, 2022, removing his gross negligence

---

[17] Dkt. No. 28-1 at 1-2.
[18] Dkt. No. 28-3 at 12-13.
[19] Dkt. No. 27-3 at 2-3.
[20] *Id.* at 4.
[21] *Id.*
[22] *See* Dkt. No. 28-2 at 2.
[23] *Id.* at 1; Dkt. No. 28-4.
[24] Dkt. No. 28-1 at 9.
[25] Dkt. No. 1-1 at 5-7.
[26] Dkt. No. 1.

claim.[27] Defendant now moves for summary judgment, arguing that it had no knowledge of the dangerous condition and, therefore, no liability.[28]

## II. SUMMARY JUDGMENT LEGAL STANDARD

Under Rule 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29] In a motion for summary judgment, the movant bears the initial burden of showing the absence of a genuine issue of material fact.[30] The burden then shifts to the non-movant to demonstrate the existence of a genuine issue of material fact.[31] "A fact is 'material' if its resolution could affect the outcome of the action,"[32] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[33] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[34]

In conducting its analysis, the Court considers evidence from the entire record and views that evidence in the light most favorable to the non-movant.[35] Rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[36] Parties may cite to any part of the record, or bring evidence in the motion and response.[37] By either method, parties need not proffer evidence in a form

---

[27] Dkt. No. 15.
[28] Dkt. No. 27.
[29] Fed. R. Civ. P. 56(a).
[30] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[31] *See id.*
[32] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, Inc., 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[33] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[34] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[35] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).
[36] *See* Fed. R. Civ. P. 56(e).
[37] *See* Fed. R. Civ. P. 56(c).

admissible at trial,[38] but must proffer evidence substantively admissible at trial.[39] However, a plaintiff may not rely simply upon the allegations in his complaint, but rather must bring forth summary judgment evidence of those facts alleged in the complaint.[40]

### III.   ANALYSIS

First, a distinction. Defendant's motion attacks Plaintiff's ability to "prove that Defendant was negligent under premises liability law . . . ."[41] But "[n]egligence and premises liability claims . . . are separate and distinct theories of recovery, requiring plaintiffs to prove different, albeit similar, elements to secure judgment in their favor."[42] "When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. When the injury is the result of the property's condition rather than an activity, premises-liability principles apply."[43]

Plaintiff's negligence claim can be easily dismissed because it "requires [him to] have been injured by or as a contemporaneous result of the *activity itself* rather than by a condition created by the activity."[44] A leaky air conditioner is a condition, not an activity. Therefore, summary judgment is **GRANTED** as to Plaintiff's negligence claim.

To maintain a claim under a premises liability theory as an invitee, Plaintiff must prove:

(1) that [Defendant] had actual or constructive knowledge of some condition on the premises;
(2) that the condition posed an unreasonable risk of harm to [Plaintiff];

---

[38] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[39] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("[T]he evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").
[40] *Hugh Symons Grp. v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002) (citing *Celotex*, 477 U.S. at 324) ("Unsubstantiated assertions are not competent summary judgment evidence.").
[41] Dkt. No. 27 at 2, ¶ 5.
[42] *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017).
[43] *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016).
[44] *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (emphasis added).

> (3) that [Defendant] did not exercise reasonable care to reduce or to eliminate the risk; and
> (4) that [Defendant's] failure to use such care proximately caused [Plaintiff's] personal injuries.[45]

Defendant's motion takes aim at element (1), claiming that Defendant had no actual or constructive knowledge of the leaky air conditioner.[46] Constructive knowledge turns on what Defendant should have known: "an owner or occupier is not liable for deterioration of its premises unless it knew of or *by reasonable inspection would have discovered* the deterioration."[47]

Defendant states that Plaintiff noticed no water on the ground under the ceiling tile before it fell.[48] But there are other signs of impending danger besides water on the ground, such as tile discoloration or sagging. Herrera testified that he did not notice any of these signs of deterioration before he left at 4:00 p.m.[49] and that he "did [his] safety walks in the morning, in the midday, and before [he] left, and [he] did not see anything that was hazardous that could've caused this."[50]

But Defendant does not truly evince what it needs to win on summary judgment: that it conducted a reasonable inspection and found nothing, or that the leak would have been undiscoverable even with a reasonable inspection. While the evidence indicates that Herrera takes "safety walks," there is no evidence that these walks included inspection of the ceiling tiles for signs of HVAC leaks. In fact, Herrera expressly states that Store staff do not regularly check the tiles, but instead just replace tiles when they organically notice discoloration.[51]

---

[45] *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983).
[46] Dkt. No. 27 at 3-4.
[47] *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000) (emphasis added).
[48] *Id.* ¶ 7.
[49] Dkt. No. 28-3 at 13.
[50] *Id.* at 21.
[51] *Id.* at 28.

A "premises owner has a duty to inspect the premises and warn [invitees] of dangerous conditions that are not open and obvious and that the owner knows or should have known exist."[52] Given the Store's history of HVAC leaks,[53] there remain genuine issues as to constructive knowledge, including (1) whether the HVAC leak would have been discoverable by reasonable inspection, and (2) whether Defendant inspected the Store with reasonable frequency and attention to the ceiling.

### IV. HOLDING

For the foregoing reasons, the Court **GRANTS** Defendant's motion as to Plaintiff's negligence theory and **DENIES** Defendant's motion as to Plaintiff's premises liability theory.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 20th day of June 2023.

_____
Micaela Alvarez
United States District Judge

---

[52] *Coastal Marine Serv. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999).

[53] *Accord Bradford v. Tex. Health Harris Methodist Hosp.*, No. 02-20-00357-CV, 2021 Tex. App. LEXIS 3500, at *16 (Tex. App.—Fort Worth May 6, 2021, pet. denied) ("[E]vidence of the prior instances of water leaking from an air-conditioning unit on the second floor to the first floor's labor-and-delivery department raised a genuine fact issue as to the Hospital's constructive knowledge."); *but see Coward v. H.E.B., Inc.*, No. 01-13-00773-CV, 2014 Tex. App. LEXIS 7637, at *13-14 (Tex. App.—Houston [1st Dist.] July 15, 2014, no pet.) (finding that multiple sources of leaks undermined defendant's constructive knowledge of the risk).