United States District Court
Southern District of Texas

**ENTERED**

July 21, 2023

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| RAUL CHAVEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:22-cv-00199 |
| | § | |
| DOLGENCORP OF TEXAS, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER AND OPINION

The Court now considers Plaintiff's motion to exclude the testimony of Andrew Whaley, MD,[1] and Defendant's response.[2] After considering the proposed testimony and the relevant authorities, the Court **DENIES** the motion.

### I.    FACTUAL AND PROCEDURAL HISTORY

This case arises from an incident in which a ceiling tile fell on a shopper (Plaintiff) in a Dollar General store (owned by Defendant) allegedly causing injuries. Defendant's proffered expert, Andrew Whaley, MD, is an orthopedic surgeon who provides an opinion on the extent of causation, the necessity of the procedures Plaintiff underwent, and the reasonable cost of those procedures.[3]

### II.    LEGAL STANDARD FOR EXPERT OPINION ADMISSIBILITY

"[T]he Federal Rules of Evidence control the admission of expert testimony."[4] Rule 702 provides:

---

[1] Dkt. No. 26.
[2] Dkt. No. 30.
[3] Dkt. No. 26-3.
[4] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002).

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.[5]

"Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful. Similarly, low probative value, or a total lack of it, will render proposed expert testimony unhelpful and, therefore, inadmissible under Federal Rule of Evidence 702."[6] The Court scrutinizes proposed expert testimony more searchingly than lay witness testimony for its pertinency and potential prejudice.[7]

Once testimony is deemed relevant, the reliability of the expert's methodology becomes the touchstone. The *Daubert* test is a flexible one,[8] and "under *Daubert,* any step that renders the analysis unreliable renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology."[9]

To test reliability, the Court assesses the intellectual rigor of the proposed expert testimony,[10] which must be validated by an independent and objective source beyond the expert's

---

[5] FED. R. EVID. 702.

[6] 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE, § 702.02[5] (Mark S. Brodin, ed., 2d ed. 1997) (cleaned up), *quoted in Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 591 (1993).

[7] *Rule 702 of the Federal Rules of Evidence Is Sound; It Should not be Amended*, 138 F.R.D. 631, 632 (1991) (Weinstein, J.), *quoted in Daubert*, 509 U.S. at 595.

[8] *Daubert*, 509 U.S. at 594.

[9] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278 n.11 (5th Cir. 1998) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994) (cleaned up).

[10] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

assurances,[11] and the Court "should ensure that the [expert] opinion comports with applicable professional standards outside the courtroom and that it will have a reliable basis in the knowledge and experience of [the] discipline."[12] However, an expert report or opinion need not be in lockstep with the relevant discipline's prevailing view in order to be admissible.[13] "Certain more specific factors, such as testing, peer review, error rates, and 'acceptability' in the relevant scientific community . . . might prove helpful in determining the reliability of a particular scientific 'theory or technique.'"[14]

The Court's task at this stage is gatekeeping, not premature factfinding. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[15] Indeed, the Fifth Circuit has cautioned against transforming a motion to exclude an expert into a trial on the merits, because the factfinder may be entitled to accept or reject an expert's testimony *including* by judging whether the predicate facts on which an expert relied are accurate.[16] In short, experts may rely on disputed facts, but not unsubstantiated assertions. Cross-examination and presentation of competing evidence, rather than exclusion for inadmissibility, are the traditionally favored ways

---

[11] *Brown v. Ill. Cent. R.R.*, 705 F.3d 531, 536 (5th Cir. 2013) (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)); *see Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (alteration and quotation omitted) ("But the existence of sufficient facts and a reliable methodology is in all instances mandatory. Without more than credentials and a subjective opinion, an expert's testimony that "it is so" is not admissible.").

[12] *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) (second alteration in original) (quotation omitted).

[13] *Whitehouse Hotel LP v. Comm'r*, 615 F.3d 321, 332 (5th Cir. 2010) (rejecting the argument that compliance with uniform published professional standards goes to admissibility rather than credibility); *see Daubert*, 509 U.S. at 588 ("Nothing in the text of this Rule establishes 'general acceptance' as an absolute prerequisite to admissibility.").

[14] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert*, 509 U.S. at 593–94).

[15] *United States v. 14.38 Acres of Land, more or less Situated in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see* FED. R. EVID. 702 advisory committee's note to 2000 amendment ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.").

[16] *See Pipitone*, 288 F.3d at 250.

to challenge an expert opinion.[17] "It is the role of the adversarial system, not the court, to highlight weak evidence."[18]

### III.   ANALYSIS

Plaintiff's objections to Dr. Whaley's testimony attack his assessment of causation and of medical billing. The Court will address each in turn.

### A.   *Reliability of Dr. Whaley's opinions on causation*

Dr. Whaley concludes that the fallen ceiling tile resulted only in a contusion to Plaintiff's right shoulder, and that any additional injuries were not attributable to the incident that is the subject of this litigation.[19] To arrive at this conclusion, he reviewed:

- The customer incident report;
- Photos from the incident;
- Video from the incident;
- ER medical records and billing;
- Pharmacy records;
- Medical and billing records from Open MRI of McAllen;
- Medical and billing records from Quantum Pain Medical;
- Medical and billing records from Centrum Surgery;
- ASP Cares records;
- Patterson Chiropractic Clinic records;
- Family Health Center of Mission records; and
- Photos from surgery.[20]

Plaintiff argues that this conclusion is outside Dr. Whaley's wheelhouse: that he "is not an accident reconstructionist nor is he a bio-mechanical expert."[21] The basis of his opinion, according to

---

[17] *See MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 852 (5th Cir. 2015) (quoting *Daubert*, 509 U.S. at 596; *see 14.38 Acres of Land*, 80 F.3d at 1078 ("[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.").

[18] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

[19] Dkt. No. 26-3 at 3.

[20] Dkt. No. 30-1 at 9.

[21] Dkt. No. 26 at 3.

Plaintiff, says nothing about the force exerted on Plaintiff's body at the time of the incident, which is critical for a reliable opinion on causation.[22]

While the kinetics of falling fiber board may be a gap in Dr. Whaley's expertise, it does not render his opinion on causation unreliable per *Daubert*. As a physician and orthopedic surgeon, Dr. Whaley has expertise in comparing patient history to imaging studies to determine whether a condition is traumatic or degenerative.[23] Dr. Whaley's training and experience enable him to correlate a patient's injury with the alleged cause of that injury. He also has experience conducting physical examinations to determine the extent of a patient's injuries, which he deploys to form an opinion from the video of Plaintiff's behavior and range of movement immediately after the incident.[24] In sum, Dr. Whaley is qualified to provide an opinion on whether a condition is consistent with a specific type of injury.

Any uncertainty about the force of the impact on Plaintiff's shoulder at the time of the incident may result in the jury having to weigh the evidence. But that uncertainty does not render Dr. Whaley's opinion on causation unreliable as to causation.

### B. Admissibility of Dr. Whaley's testimony on medical billing and insurance

Plaintiff lodges three inter-related arguments about Dr. Whaley's opinion on Plaintiff's bills: that the reasonableness of the medical bills is not relevant, that the testimony is barred by the collateral source rule, and that the testimony will mislead the jury. The role of a tort victim's insurance in calculating damages for medical expenses is a bit complicated, so the Court will summarize the current state of the law.

---

[22] *Id.* at 4.

[23] Dkt. No. 30-1 at 16-17.

[24] *Id.* at 15 ("So he's using his arms, lifting the bag, carrying it in his right arm. You know, to me, that's normal. It didn't look like he was trying to favor one arm or the other. It certainly didn't look like he was wincing in pain or anything like that.").

1.  Legal relevancy of insurance

Under Texas law, the collateral source rule "precludes any reduction in a tortfeasor's liability because of benefits received by the plaintiff from someone else—a collateral source."[25] Thus generally, if a defendant harms an insured plaintiff, the defendant is liable for all the expenses incurred, not just the plaintiff's copay or deductible.

But what does that phrase, "expenses incurred," mean? In Texas, "[i]n addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount *actually paid or incurred* by or on behalf of the claimant."[26] So while a plaintiff's personal contribution under their insurance policy is not the standard, neither is the amount the provider bills (the "chargemaster rate") if that amount is negotiated down by the insurer. In other words, "the common-law collateral source rule does not allow recovery as damages of medical expenses a health care provider is not entitled to charge."[27]

In fact, the Supreme Court of Texas recently addressed just this point in *K & L Auto Crushers* saying, "if a provider bills an insured patient at chargemaster rates but, pursuant to its contract with the patient's insurer, is only entitled to receive payment at a reduced, negotiated rate, then the insured can only recover the reduced amount from the tortfeasor because that's the amount 'actually paid or incurred.'"[28]

Furthermore, one of the "other limition[s]" alluded to in § 41.0105 is reasonableness.[29] "If a claimant agrees or is required to pay a medical provider more than a reasonable amount, the difference between the amount paid and a reasonable amount is not a 'necessary and usual result

---

[25] *Haygood v. De Escabedo*, 356 S.W.3d 390, 394-95 (Tex. 2011).
[26] TEX. CIV. PRAC. & REM. CODE § 41.0105 (emphasis added).
[27] *Haygood*, 356 S.W.3d at 396.
[28] *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 249 (Tex. 2021).
[29] *Id.*

of the tortious act,' but of the claimant's or provider's conduct."[30] "Although the reasonableness limitation may in some cases leave a claimant 'undercompensated,' it ensures that the tortfeasor is held responsible only for losses naturally resulting from its wrongful act."[31] While not dispositive, negotiated rates between a provider and insurers is relevant in determining whether the incurred rate is reasonable.[32] On that point, *K & L Auto Crushers* effectively overruled the Fifth Circuit's "Erie guess" arriving at the opposite conclusion from Texas law six years earlier.[33]

Order matters. In litigating damages, it is inapt and likely irrelevant for a defendant to attack the reasonableness of a chargemaster rate if the plaintiff does not actually claim the chargemaster amount as the amount paid or incurred.

## 2. Application

Here, Dr. Whaley's report states that Plaintiff "used his Cigna insurance card to pay for the ER visit."[34] Assuming this is a true representation of the evidence obtained in discovery, Plaintiff's insured status, the name of his insurer, and potentially even the type of policy will be unavoidably relevant to determine the "amount actually paid or incurred" because Cigna has likely negotiated a rate below the chargemaster rate with the emergency room, South Texas Health. However, Plaintiff may be correct that this sentence (and the phrase "used his . . . card") misleadingly paints a picture that Plaintiff is not *really* out anything by the ER visit—the inference that the collateral source rule aims to block. So while evidence that Plaintiff is covered by insurance may be

---

[30] *Id.* at 250-51.

[31] *Id.* at 250 (internal citations omitted).

[32] *See id.* at 251.

[33] *Guzman v. Jones*, 804 F.3d 707, 711-12 (5th Cir. 2015) ("Reduced prices that [plaintiff] may have received had he participated in health benefits or insurance programs for which he may have been eligible are irrelevant according to Texas law.").

[34] Dkt. No. 26-3 at 2.

objectionable at trial, the fact of insurance coverage leading to negotiated rates is clearly relevant to the reasonableness of the claimed medical expenses.

Other than the above referenced comment, the topic of Plaintiff's Cigna insurance is dropped from Dr. Whaley's report, even where it is a necessary step in establishing the relevance of his opinion. For example, Dr. Whaley notes that an injection that Plaintiff received in April 2022 with a CPT code 20610 was billed at $3,500.[35] He states that in his "medical opinion, this charge amount is excessive and not what is typically reimbursed for the procedure."[36] He follows up in his addendum to say that this same procedure is "typically reimbursed by insurance between $60 and $128. Medicare reimburses $64.71 for this office procedure. This amount does not include the cost of injectables."[37]

But the Court cannot tell from the report or any other evidence in the record whether the $3,500 was actually incurred. In fact, neither party's briefing indicates whether Plaintiff incurred the chargemaster amount or Cigna's negotiated amount for the injection, surgery, and postoperative care. Plaintiff's insurance-agnostic statement on this hardly helps:

> [B]ecause Plaintiff is legally obligated to pay the full amounts billed by his medical providers, evidence of reduced prices Plaintiff *may* have received *if* his billed had been paid by Medicare is wholly irrelevant.[38]

Defendant does not allege—and Plaintiff expressly denies[39]—that Plaintiff is a Medicare recipient. But under *K & L Auto Crushers*, "the rates healthcare providers charge to private insurers and public payors and their costs for providing services to a patient constitute relevant facts and data" that goes to reasonableness.[40]

---

[35] Dkt. No. 26-3 at 3.
[36] *Id.*
[37] Dkt. No. 30-2 at 1.
[38] Dkt. No. 26 at 5.
[39] *Id.*
[40] *K & L Auto Crushers*, 627 S.W.3d at 254.

Dr. Whaley's attacks on the chargemaster rates are relevant if Plaintiff claims those amounts as his damages, but irrelevant if not. If Plaintiff claims only negotiated amounts between Cigna and the providers who treated him, then testimony about the chargemaster rates would not relate to a live issue in the case. Since the Court does not know what Plaintiff is asking for, it will—at present—decline to strike portions of the report and testimony about reasonableness. Should the case proceed to trial, the Court can craft an approach to address both parties' concerns.

**IV.** **HOLDING**

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to exclude the testimony of Dr. Whaley's report.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 21st day of July 2023.

_____

Micaela Alvarez
Senior United States District Judge